**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MERCER HEALTH & BENEFITS, LLC,

                    Plaintiffs,

    - against –

MATTHEW DiGREGORIO, JOANNE
STEED, JADA PRESTON, and LOCKTON
COMPANIES, LLC,

      Defendants.

Docket No. 18 Civ. 1805 (JGK)

 

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION**

Martin S. Siegel
S. Preston Ricardo
Leron Thumim
**GOLENBOCK EISEMAN ASSOR BELL &
PESKOE LLP**
711 Third Avenue
New York, NY 10017

*Attorneys for Defendants Matthew
DiGregorio, Joanne Steed, Jada
Preston, and Lockton Companies, LLC*

Lyle Shapiro *(pro hac vice pending)*
**HERSKOWITZ SHAPIRO LLP**
9100 S. Dadeland Blvd.
Miami, FL 33156

*Attorney for Defendants Matthew
DiGregorio, Joanne Steed, and Jada
Preston*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

LEGAL STANDARD ........................................................................................................5

ARGUMENT .....................................................................................................................5

   I.   The Individual Defendants Did not Take – And Lockton Did Not Receive –
        Any "Confidential Information" ...............................................................................5

       A.   The Complaint and Affidavits Submitted by Mercer Fail to Identify Any
           Allegedly Misappropriated Confidential Information ....................................5

       B.   The Individual Defendants Did Not Misappropriate any Confidential Client
           Information ......................................................................................................6

   II.  There is no Basis for Granting Any Relief Against Any Lockton Entity ........................11

       A.   This Court Lacks Personal Jurisdiction Over Lockton Co. .........................12

       B.   Lockton Southeast Did Not Tortiously Interfere with any Enforceable
           Contract ........................................................................................................14

       C.   Defendants Did Not Tortiously Interfere With Plaintiff's Existing or
           Prospective Business Relationships ..............................................................14

       D.   Defendants Did Not Unfairly Compete or Misappropriate Confidential
           Information ....................................................................................................16

  III.  The Temporary Restraining Order and Proposed Preliminary Injunction Exceed
        the Enforceable Scope of the Employment Agreements ...................................17

       A.   The Non-Solicitation Provisions of the Individual Defendants'
           Employment Agreements are Unenforceable to the Extent that they Apply
           to Prospective Clients ...................................................................................18

       B.   The Non-Solicitation Provisions of the Individual Defendants'
           Employment Agreements are Unenforceable ..............................................19

       C.   There is No Basis for an Order Enjoining Any Defendant from Servicing
           Clients ..........................................................................................................21

  IV.  Plaintiff Has Not Shown that it will Suffer Irreparable Harm in the Absence of
        an Injunction .................................................................................................22

A.  Plaintiff's Potential Losses are Readily Quantifiable. ...................................................22

B.  The "Irreparable Harm" Provisions in the Employment Agreements Are Not Dispositive With Respect to the Individual Defendants. ......................................22

C.  The "Irreparable Harm" Provisions in the Employment Agreements Do Not Apply to Any Lockton Entity .........................................................................................23

V.  If the Court Issues a Preliminary Injunction, Plaintiff Should be Required to Post a Bond. ..............................................................................................................................23

CONCLUSION.........................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Abe's Rooms, Inc. v. Space Hunters, Inc.*,
    833 N.Y.S.2d 138 (2d Dep't 2007)..................................................................17

*Arnold K. Davis & Co. v. Ludemann*,
    559 N.Y.S.2d 240 (1st Dep't 1990) ...............................................................10

*Art and Cook, Inc. v. Haber*,
    2017 WL 4443549 (E.D.N.Y.  Oct. 3, 2017) ....................................................8

*Baker's Aid v. Hussmann Foodservice Co.*,
    830 F.2d 13 (2d Cir 1987)...............................................................................22

*BDO Seidman v. Hirshberg*,
    93 N.Y.2d 382 (N.Y. 1999) ......................................................................17, 19

*Briskin v. All Seasons Servs., Inc.*,
    615 N.Y.S.2d 166 (4th Dep't 1994).................................................................8

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
    137 S. Ct. 1773 (2017)...................................................................................13

*Buhler v. Michael P. Maloney Consulting, Inc.*,
    749 N.Y.S.2d 867 (1st Dep't 2002) ...............................................................10

*Continental Indus. Group, Inc. v. Altunkilic*,
    2017 WL 2895933 (S.D.N.Y. July 7, 2017) ........................................15, 16, 17

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)....................................................................................12

*DeWitt Stern Grp., Inc. v. Eisenberg*,
    2013 WL 2420835 (S.D.N.Y. June 4, 2013) ..................................................22

*Dewitt Stern Grp., Inc. v. Eisenberg*,
    257 F.Supp.3d 542 (S.D.N.Y. 2017)..............................................................11

*Doninger v. Niehoff*,
    527 F.3d 41 (2d Cir. 2008)...............................................................................5

*Elsevier Inc. v. Doctor Evidence, LLC*,
    2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ...................................................17

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)...........................................................................16

*Fishman v. Paolucci*,
    628 F. App'x 797 (2d Cir. 2015) ......................................................................5

*Free Country Ltd v. Drennen*,
    235 F. Supp. 3d 559 (S.D.N.Y. 2016)..............................................................8

*H. Meer Dental Supply Co. v. Commisso*,
    702 N.Y.S.2d 463 (3d Dep't 2000)..................................................................8

*Iron Mountain Info. Mgmt., Inc. v. Taddeo*,
    455 F. Supp. 2d 124 (E.D.N.Y. 2006) .............................................................9

*Ivy Mar Co. v. C.R. Seasons Ltd.*,
    907 F. Supp. 547 (E.D.N.Y. 1995) ..................................................................8

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)............................................................18

*Kanan Corbin Schupak & Aronow Inc. v. FD Int'l Ltd.*,
    797 N.Y.S. 2d 883 (Sup. Ct. N.Y. Cnty. 2005) ...........................................21

*Kelly v. Evolution Markets, Inc.*,
    626 F. Supp. 2d 364 (S.D.N.Y. 2009).............................................................7

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d. Cir. 2006)..........................................................................14

*Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*,
    26 N.Y.S. 3d 725 (Table) (Sup. Ct. N.Y. Cnty. 2015)........................... *passim*

*Marsh USA Inc. v. Doerfler*,
    9 N.Y.S.3d 594 (Table) (Sup. Ct. N.Y. Cnty. 2015).......................................9

*Marsh USA Inc. v. Karasaki*,
    2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) ........................................ *passim*

*Marsh USA Inc. v. Schuhriemen*,
    183 F. Supp. 3d 529 (S.D.N.Y. 2016)................................................... *passim*

*Markovits v. Venture Info Capital, Inc.*,
    129 F. Supp. 2d 647 (S.D.N.Y. 2001)............................................................22

*Nadel v. Play-By-Play, & Novelties, Inc.*,
    208 F.3d 368 (2d Cir. 2000)..........................................................................15

*Natural Organics, Inc. v. Kirkendall*,
    860 N.Y.S.2d 142 (2d Dep't 2008)................................................................10

*Nebraskaland, Inc. v. Brody*,
2010 WL 157496 (S.D.N.Y. Jan. 13, 2010) ....................................................9

*NextEngine Ventures, LLC v. Network Sols., LLC*,
2017 WL 4569679 (Sup. Ct. N.Y. Cnty. Oct. 13, 2017) ...................................13

*Reed, Roberts Assocs. v. Strauman*,
40 N.Y.2d 303 (N.Y. 1976) .............................................................................7

*Restis v. Am. Coalition Against Nuclear Iran, Inc.*,
53 F. Supp.3d 705 (S.D.N.Y. 2014).................................................................14

*Silipos, Inc. v. Bickel*,
2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006)......................................................7

*Susskind v. IPCO Hos. Supply Corp.*,
373 N.Y.S.2d 627 (2d Dep't 1975)..................................................................16

*Symquest Group, Inc. v. Canon U.S.A., Inc.*,
186 F. Supp.3d 257 (E.D.N.Y. 2016) ..............................................................15

*Tarazi v. Truehope, Inc.*,
2017 WL 5957665 (S.D.N.Y. July 28, 2017) ...................................................15

*TBA Global, LLC v. Proscenium Events, LLC*
2013 WL 1455933 (Sup. Ct. N.Y. Cnty. Apr. 1, 2013)........................................8

*Ticor Title Ins. Co. v. Cohen*,
173 F.3d 63 (2d Cir. 1999)..............................................................................17

*Tri-Star Lighting Corp. v. Goldstein*,
58 N.Y.S.3d 448 (2d Dept. 2017) ...................................................................16

*Tucker Anthony Realty Corp. v. Schlesinger*
888 F.2d 969 (2d Cir.1989)..............................................................................5

*Walden v. Fiore*,
134 S.Ct. 1115 (2014).....................................................................................12

*Willis of New York, Inc. v. DeFelice*,
750 N.Y.S.2d 39 (1st Dep't 2002) ...................................................................21

2974421.7

Defendants Matthew DiGregorio ("DiGregorio"), Joanne Steed ("Steed"), Jada Preston ("Preston" and, together with DiGregorio and Steed, the "Individual Defendants"), and Lockton Companies, LLC ("Lockton Co.") respectfully submit this Memorandum of Law in response to the Order to Show Cause for a Temporary Restraining Order and a Preliminary Injunction entered in this action on March 1, 2018 (Doc. No. 5) and Plaintiff's brief in support thereof.

## PRELIMINARY STATEMENT

DiGregorio, Steed, and Preston are former employees of Plaintiff Mercer Health & Benefits, LLC ("Mercer" or "Plaintiff") who have joined Southeast Series of Lockton Companies LLC ("Lockton Southeast"), a competitor of Plaintiff's.  Years earlier, when DiGregorio, Steed, and Preston first began working for Plaintiff, they signed Non-Solicitation and Confidentiality Agreements (the "Employment Agreements").  This action arises out of alleged breaches of the Employment Agreements by DiGregorio, Steed, and Preston.  The appropriate scope of this dispute includes determining:  the extent to which the Employment Agreements are enforceable; whether the Individual Defendants who signed those agreements breached any enforceable provision; and what – if any – relief should be granted to Plaintiff.

Instead, Plaintiff is using this action to improperly stifle competition.  *First*, Plaintiff named Lockton Co. – an entity that does not employ the Individual Defendants and has no connection to this dispute – as a defendant.[1]  *Second*, Plaintiff has asserted a number of legally and factually baseless claims with the aim of obtaining an injunction prohibiting not just the solicitation of Plaintiff's clients, but also of Plaintiff's *prospective* clients – a category that

---

[1] To whatever extent Plaintiff inadvertently named the wrong Lockton entity in its Complaint, counsel for Defendants informed Plaintiff of the issue at the March 1, 2018 hearing in this action (the "TRO Hearing") and suggested that Plaintiff file an amended complaint substituting Lockton Southeast – the Individual Defendants' employer – for Lockton Co.  Indeed, at the TRO Hearing, Judge Engelmayer stated that he "expect[ed]" Plaintiff to file an amended complaint by March 2, 2018 at 9:00 a.m.  As of the date of this filing, Plaintiff has yet to do so.

1

Plaintiff has wrongly defined so broadly as to encompass much of the entire marketplace. In effect, Plaintiff is seeking an injunction preventing a competitor from competing with it.

Judge Engelmayer granted Plaintiff temporary relief in the form of an order enjoining defendants, among other things, from soliciting "any prospective clients of Mercer with whom any Individual Defendant had contact or from whom any Individual Defendant solicited business on behalf of Mercer during the last two years of his or her employment." (TRO at 3). During the TRO Hearing, Judge Engelmayer directed Mercer to prepare a list "limited to entities as to whom Mercer has a specific factual basis for claiming that one of the three individual defendants knew Mercer was preparing a pitch." (TRO Hearing Tr. 74:2-10.) Mercer ignored the Court's instructions and submitted a grossly overbroad list of Eight Hundred and Seventy (870) entities. The Court's TRO was intended to provide Mercer with temporary relief tailored to the subject matter of this action. Rather than accept that relief, Mercer instead attempted to hijack the TRO to make it practically impossible for the Individual Defendants to work in the industry, and to improperly hamstring a competitor's business.

Rather than entertain Mercer's far-reaching invitation to prevent its competitor from competing with it, this Court should focus on the legitimate questions at the heart of the dispute: (1) to what extent, if any, did the Individual Defendants breach enforceable provisions of the Employment Agreements; and (2) to what relief, if any, is Plaintiff entitled?

The tort claims – specifically, the Fifth, Seventh, and Eight Claims for Relief – are all premised on defendants' alleged misappropriation of Mercer's "Confidential Information and Trade Secrets." But the Complaint and the affidavits submitted by Plaintiff in support of the TRO are utterly devoid of specifics as to what confidential information and trade secrets were allegedly misappropriated. And this is with good reason: the Individual Defendants did not take or provide

2

to any Lockton entity – and no Lockton entity received, let alone misused – any confidential information or trade secrets. Ultimately, Plaintiff has failed to demonstrate that it has any likelihood of succeeding in any of its claims against any Lockton entity.

As to the Individual Defendants, this Court has previously ruled that Non-Solicitation Agreements similar to those here are not enforceable to the extent they cover *prospective* clients. Moreover, multiple New York courts have held that restrictive covenants in insurance broker employment agreements – such as the agreements drafted by Marsh USA, an affiliate of Plaintiff, and in the same industry – are not enforceable *at all*.

Plaintiff has not shown that it is likely to succeed in any of its claims against defendants. Accordingly, the TRO must be vacated, and Plaintiff must be denied any injunctive relief.

## STATEMENT OF FACTS[2]

On or about January 17, 2018, Lockton Southeast – which, together with the other Lockton entities, comprises the world's largest, privately held, independent insurance broker – hired DiGregorio, Steed, and Preston, all of whom previously worked for Mercer, a competitor of Lockton Southeast.[3] *See* DiGregorio Decl. ¶ 4; Steed Decl. ¶ 4; Preston Decl. ¶ 4; Sharma Decl. ¶ 4. Years earlier, each of the Individual Defendants had signed Employment Agreements with Mercer that purport to restrict: (1) their ability to solicit or service former, current, and prospective clients of Mercer; and (2) their use of Mercer's "Confidential Information and Trade Secrets."

---

[2] The relevant facts are more fully set forth in the Declarations of Matthew DiGregorio ("DiGregorio Decl."), JoAnne Steed ("Steed Decl."), Jada Preston ("Preston Decl."), and Manoj Sharma ("Sharma Decl.") submitted herewith. Depositions of individuals with knowledge relevant to this dispute have been scheduled to take place before the March 15 preliminary injunction hearing scheduled in this action. However, as of the date of this filing, no depositions have yet taken place. Accordingly, defendants reserve the right to present additional facts at the hearing.

[3] In Plaintiff's Memorandum of Law in Support of its Motion for a Temporary Restraining Order, Preliminary Injunction and Expedited Discovery ("Pl. Mem."), Plaintiff cited to a number of actions that have been commenced against Lockton entities over the previous twelve years. Pl. Mem. at 2. Not only do those actions lack any relevance whatsoever to this action, but not one of those cases resulted in any kind of finding that any Lockton entity had committed any wrongdoing.

3

When Lockton Southeast hired the Individual Defendants, each of them was instructed not to take any Mercer documents or information with them.  *See* DiGregorio Decl. ¶ 9; Steed Decl. ¶ 7; Preston Decl. ¶ 7; Sharma Decl. ¶ 5.   The Individual Defendants followed those instructions – none of them took any confidential documents or information from Mercer to Lockton Southeast, nor did they share any confidential documents or information of Mercer with Lockton Southeast.  *See* DiGregorio Decl. ¶¶ 9, 10; Steed Decl. ¶¶ 7, 8; Preston Decl. ¶¶ 7, 8; Sharma Decl. ¶¶ 5-7.  The Individual Defendants did not retain – let alone provide to any Lockton entity – any documents from Mercer concerning client pricing, preferences, or renewal dates.  *See* DiGregorio Decl. ¶ 11; Steed Decl. ¶ 9; Preston Decl. ¶ 9.

As the Individual Defendants left Mercer, they retained only their Outlook contact lists, which consist of publicly-available information including names, addresses, phone numbers, and e-mail addresses for their contacts.   Each contact list includes not just information for professional contacts – all of which are well-known companies readily ascertainable as potential business opportunities – but also contact information for friends and family.  The entries in the contact list were accumulated from:  internet research; reviews of directories; publicly filed documents such as IRS Form 5500s; and years of personal and professional interactions, including attendance at trade shows and professional or networking events.  *See* DiGregorio Decl. ¶¶ 5-7; Steed Decl. ¶¶ 5, 6; Preston Decl. ¶¶ 5, 6.

Lockton Co. is a Missouri limited liability company that has no employees and whose sole member is another limited liability company.  Sharma Decl. ¶ 10.   Each "Series LLC" affiliated with Lockton Co. is an operating company for a specific region – for example, Lockton Southeast.  Lockton Southeast is the operating company for the Southeast United States.  Lockton Southeast – and *not* Lockton Co. – is the Individual Defendants' employer.  Sharma Decl. ¶¶ 4, 10.  In fact,

4

Lockton Co. has no relationship with the Individual Defendants and lacks any connection to the subject matter of this dispute.

## LEGAL STANDARD

"A party seeking a preliminary injunction ordinarily must show:  (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).  To establish a likelihood of irreparable harm, a party must demonstrate that, absent injunctive relief, it will suffer "an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989) (quotation and citation omitted).  To the extent that the injunction sought will alter the status quo, the injunction should only issue "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Fishman v. Paolucci*, 628 F. App'x 797, 800 (2d Cir. 2015) (quotation, citation, and emphasis omitted).

## ARGUMENT

I.    **THE INDIVIDUAL DEFENDANTS DID NOT TAKE – AND LOCKTON DID NOT RECEIVE – ANY "CONFIDENTIAL INFORMATION"**

    A.    **The Complaint and Affidavits Submitted by Mercer Fail to Identify Any Allegedly Misappropriated Confidential Information**

The Complaint asserts that the Individual Defendants misappropriated Mercer's "Confidential Information and Trade Secrets," as defined in the Confidentiality provisions in the Employment Agreements.  Compl. ¶¶ 7, 10, 105.  It also implies that the Individual Defendants misappropriated "client information" and "personnel information" as defined in the Employment Agreements.  Compl. ¶¶ 35, 60, 80.  However, there are no specific allegations in the Complaint as

to what client or personnel information the Individual Defendants supposedly misappropriated. Instead, allegations regarding disclosure of such information are solely based upon Mercer's information and belief, and not personal knowledge.

The affidavits submitted by Mercer in support of the TRO are similarly vague as to the confidential information allegedly misappropriated by the Individual Defendants.  At best, the affidavits suggest that the Individual Defendants may have misappropriated (i) customer lists of Mercer clients and (ii) certain proprietary pricing information or other information about the customers other than the contact list.  *See* Marini Decl. ¶ 12; Lynn Decl. ¶ 11.

Based on the foregoing, there is no basis to grant a preliminary injunction on Counts 3, 4, 5, 7 and 8.  Each of Counts 3, 4, 5, 7, and 8 of the Complaint are premised on a misappropriation of confidential information.  *See* Compl. ¶¶ 138-140, 145-46, 173-74, 177, 182-186.  Mercer, however, has made only theoretical, unidentified assertions of the use or disclosure of unidentified information.  Without any concrete evidence regarding the misuse of confidential information, Mercer cannot show a likelihood of success on the merits as to each of these claims.  And there will be no such concrete evidence introduced at the hearing because the record evidence will show that there was no misuse of confidential information here.

### B.    The Individual Defendants Did Not Misappropriate any Confidential Client Information

Despite Mercer's failure to identify any confidential information taken by the Individual Defendants, Mercer's affidavits focus on two potential categories of confidential information – client information and pricing information.  As set forth below, even if the Individual Defendants retained any such information – and they did not – neither of these categories of information is actually confidential in this instance.

1.      The Individual Defendants' Outlook Contacts are Not Confidential
        Information

The Individual Defendants retained only their own, personal list of Outlook contacts, some of whom are Mercer clients, many of whom are not, and many of whom were contacts before the Individual Defendants joined Mercer.  *See* DiGregorio Decl. ¶ 5; Steed Decl. ¶ 5.  These contact lists include only the names, addresses, phone numbers, and e-mail addresses for these persons.  *See* DiGregorio Decl. ¶ 5; Steed Decl. ¶ 5; Preston Decl. ¶ 5.  The Individual Defendants did not retain anything other than their own contact lists.  *See* DiGregorio Decl. ¶ 9; Steed Decl. ¶ 9; Preston Decl. ¶ 9.

Mercer will likely assert that the Individual Defendants' list of Outlook contacts contains "client information," that is "Confidential Information and Trade Secrets" under the Employment Agreements.  Such restriction, however, is unenforceable under New York law, which governs here.  Restrictive covenants in employment agreements should only be enforced where "necessary to protect the employer's legitimate interests."  *Reed, Roberts Assocs. v. Strauman*, 40 N.Y.2d 303, 307 (N.Y. 1976).  Under the legitimate inquiry test, such restrictive covenants are enforceable only (1) to the extent necessary to prevent the disclosure or use of trade secrets or confidential information, or (2) where an employee's services are unique or extraordinary.  *Id.* at 308.

To establish particular information as protected confidential customer information, a plaintiff "must demonstrate that the information is not known in the trade and is only discoverable through extraordinary efforts."  *Silipos, Inc. v. Bickel*, No. 06 Civ. 2205, 2006 WL 2265055, at *5 (S.D.N.Y. Aug. 8, 2006) (citing *Battenkill Veterinary Equine P.C. v. Cangelosi*, 768 N.Y.S.2d 504, 507 (N.Y. App. Div. 2003)); *see also Kelly v. Evolution Markets, Inc.*, 626 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (citing *Columbia Ribbon & Carbon Mfg. Co. v. A–1–A Corp.*, 42 N.Y.2d

496, 499 (N.Y. 1977)) ("A customer list is not confidential where the past or prospective customers are 'readily ascertainable' from non-confidential sources outside the employer's business.").

Customer lists have been determined to be readily ascertainable from non-confidential sources when such contact information is available (i) "by calling the companies' general lines,… through external sources such as LinkedIn and Google,… and directories of buyers in the…industry," *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 566 (S.D.N.Y. 2016); (ii) from "hiring representatives, attending trade shows, [] meeting buyers from various companies[, and] simple internet searches," *Art and Cook, Inc. v. Haber*, 17-cv-1634 (LDH), 2017 WL 4443549, at *3 (E.D.N.Y.  Oct. 3, 2017); or (3) "through the yellow pages of the telephone book," *Briskin v. All Seasons Servs., Inc.*, 615 N.Y.S.2d 166, 166 (4th Dep't 1994).

Based on the foregoing standards, "customer lists are generally not considered confidential information." *H. Meer Dental Supply Co. v. Commisso*, 702 N.Y.S.2d 463, 465 (3d Dep't 2000); s*ee also TBA Global, LLC v. Proscenium Events, LLC,* No. 651171/2012, 2013 WL 1455933, at *1 (Sup. Ct. N.Y. Cnty. Apr. 1, 2013) (clients in the film insurance industry are "large well-known companies readily ascertainable as potential business opportunities" and knowledge of their identities simply cannot be considered confidential); *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 557-58 (E.D.N.Y. 1995) (customer list of retail merchants is not a trade secret where the customers are "openly engaged in business and known generally in the trade").

Here, the evidence will show that Mercer's clients and prospects are well-known companies readily ascertainable as potential business opportunities.  The Individual Defendants have submitted declarations and will testify that they primarily identified prospective clients by attending networking and professional events, reviewing directories and purchased lists,

2974421.7

conducting internet searches, and by reading IRS Form 5500s which are required to be filed by ERISA participants and are publicly available.  *See* DiGregorio Decl. ¶ 6; Steed Decl. ¶ 6; Preston Decl. ¶ 6.

In fact, the New York Supreme Court has specifically rejected the same argument made by Mercer here in a case involving Mercer's sister entity, Marsh USA, Inc., involving virtually identical confidentiality agreements in virtually the same business.  *See Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*, 26 N.Y.S. 3d 725, 725 (Table) (Sup. Ct. N.Y. Cnty. 2015) ("*Alliant*").  In that case, Marsh USA, Inc. asserted that its former employees breached their confidentiality agreements by e-mailing their "rolodexes" to themselves.  The New York Supreme Court held that "[t]he Individual Defendants' rolodexes contained publicly available information on current and potential clients that could be found in a phone book or on the Internet" and therefore was not confidential information.  *Id.; see also Marsh USA Inc. v. Doerfler*, 9 N.Y.S.3d 594 (Table) (Sup. Ct. N.Y. Cnty. 2015) ("*Doerfler*") (denying preliminary injunction to enforce restrictive covenants); *Iron Mountain Info. Mgmt., Inc. v. Taddeo*, 455 F. Supp. 2d 124, 139-40 (E.D.N.Y. 2006) (finding salesperson who took only his own contact list did not take confidential information); *Nebraskaland, Inc. v. Brody*, No. 09 Civ. 9155, 2010 WL 157496, at *7 (S.D.N.Y. Jan. 13, 2010) (finding that defendant's own contact list developed over the past 30 years was not confidential information of the plaintiff).

Mercer asserts that this Court has previously granted preliminary injunctions based upon nearly identical terms to the Mercer Confidentiality Agreement.  *See* TRO Brief at 14.  *See also Marsh USA Inc. v. Karasaki*, No. 08 Civ. 4195 (JGK), 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) ("*Karasaki*"); *Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529 (S.D.N.Y. 2016) ("*Schuhriemen*").  Neither of these cases, however, granted a preliminary injunction based upon

9

the misappropriation of confidential information.  *See Karasaki*, at *2, fn 6 ("at the September 24 hearing, plaintiffs' counsel conceded that Marsh was not relying upon a misappropriation of confidential information theory to support its breach of restrictive covenant claim."); *Schuhriemen*, at 531 n.2 (Court only enjoined solicitation and did not discuss any alleged misappropriation of confidential information).

Based on the foregoing, and the evidence to be presented at the hearing, Mercer will be unable to meet its burden for a preliminary injunction.  Mercer cannot show a likelihood of success that the Individual Defendants' Outlook contacts are protectable confidential information because the Outlook contacts solely include publicly available information concerning readily identifiable customers.  Moreover, Mercer cannot show a likelihood of success that any Lockton entity misused confidential information since the contact list is not, in fact, confidential.

2.      The Individual Defendants' Recollection of Customer Information is Not Confidential

Despite Mercer's allusions to the contrary, the Individual Defendants did not retain any information from Mercer concerning customer pricing, preferences, recent losses, terms, or renewal dates.  *See* DiGregorio Decl. ¶ 11; Steed Decl. ¶ 9; Preston Decl. ¶ 9.  To the extent the Individual Defendants have such information, it is based solely on their own recollection.  *See* DiGregorio Decl. ¶ 11; Steed Decl. ¶ 9; Preston Decl. ¶ 9.  The "use of information about an employer's customers which is based on casual memory [] is not actionable," *Arnold K. Davis & Co. v. Ludemann*, 559 N.Y.S.2d 240, 241 (1st Dep't 1990).  "It is well settled that an employee's recollection of information pertaining to the needs and habits of particular customers is not actionable."  *Buhler v. Michael P. Maloney Consulting, Inc.*, 749 N.Y.S.2d 867, 868 (1st Dep't 2002).  *Accord Natural Organics, Inc. v. Kirkendall*, 860 N.Y.S.2d 142, 143 (2d Dep't 2008).

In any event, this category of allegedly confidential customer information is not confidential under New York law.  This Court recently held that  the "insurance account information such as policy information, expiration dates, terms and conditions, and pricing all belong to clients, not brokers, and that such information can be shared by clients with competing brokers," and thus is not confidential information of the brokers.  *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F.Supp.3d 542, 582 (S.D.N.Y. 2017).  Moreover, for clients with over one hundred (100) participants, information concerning the company's health and benefits plans, which was the Individual Defendants' area of focus, is filed on IRS Form 5500 and publicly available for free at a number of websites, including the website for United States Department of Labor.  *See* DiGregorio Decl. ¶¶ 7, 8.  Thus, even if the Individual Defendants retained any information about the customers' preferences – which they did not – none of that information would be confidential information of Mercer.

Once again, Mercer has failed to show a likelihood of success on the merits regarding the misappropriation of confidential information.   The Individual Defendants do not have any confidential customer information, and the types of information that Mercer asserts is confidential are not confidential under New York law.  Since none of the information is confidential, neither the Individual Defendants nor any Lockton entity could conceivably have misused any confidential information.   Accordingly, Mercer's request for a preliminary injunction on the misuse of confidential information should be denied.

## II.     THERE IS NO BASIS FOR GRANTING ANY RELIEF AGAINST ANY LOCKTON ENTITY

As discussed above this dispute is, in essence, a breach of contract action arising out of the Individual Defendants' Employment Agreements.  Despite the fact that neither Lockton Co. nor Lockton Southeast are parties to those agreements, Plaintiffs have attempted to shoehorn a

2974421.7

Lockton entity into the action by asserting a number of common law claims against Lockton Co., including:  (1) Tortious Interference with Existing and Prospective Business Relationships (Fifth Claim for Relief); (2) Tortious Interference with Contract (Sixth Claim for Relief); (3) Unfair Competition (Seventh Claim for Relief); and (4) Misappropriation of Confidential Information (Eighth Claim for Relief).  For the reasons discussed below, these claims are factually and legally baseless.  Plaintiff cannot show a likelihood of succeeding in *any* of these claims against Lockton, and thus, there is no basis for granting any relief against any Lockton entity, much less Lockton Co.

### A.        This Court Lacks Personal Jurisdiction Over Lockton Co.

Plaintiff cannot show a likelihood of success for *any* of its claims against Lockton Co. because Plaintiff cannot establish that this Court has personal jurisdiction over Lockton Co.  "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). Thus, a court may not exercise personal jurisdiction over a nonresident defendant unless that defendant has "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Id.* (quotation omitted).

Plaintiff has effectively conceded that Lockton Co. is not subject to *general* personal jurisdiction in light of *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  *See* Compl. ¶ 16 ("[Lockton Co.] is a Missouri limited liability company with its principal place of business located [in Missouri].").  "The inquiry whether a forum State may assert *specific* jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation . . . [and] the relationship must arise out of contacts that the *defendant himself* creates with the forum state."  *Walden*, 134 S. Ct. at 1121-22 (quotation and citation omitted; emphasis

added).  Due process precludes exercise of specific personal jurisdiction over Lockton Co. because the Complaint fails to allege that any of Plaintiff's claims arise from any contacts that Lockton Co. purposefully created with New York.

The only contacts that Plaintiff alleges exist between Lockton Co. and New York are that "Defendant Lockton regularly conducts business in the State of New York, is registered to do business in the State of New York, and maintains an office [in New York]."  Compl. ¶ 17.  Even if that were true – and it is not – to the extent that such contacts exist, they "cannot [] serve as a basis for specific jurisdiction without there also being a connection between those New York contacts and the claim before the court."  *NextEngine Ventures, LLC v. Network Sols., LLC*, No. 153341/17, 2017 WL 4569679, at *3 (Sup. Ct. N.Y. Cnty. Oct. 13, 2017); *see also Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("When there is no [affiliation between the forum and the underlying controversy], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.").

Lockton Co. has no connection with the subject matter of this dispute, let alone a connection arising out of any contacts between Lockton Co. and the State of New York. Moreover, all of the Individual Defendants' alleged activities took place in Florida.  Lockton does not employ any of the Individual Defendants; on the contrary, Lockton has no employees at all. *See* Sharma Decl. ¶ 10.  Plaintiff is unable to make a prima facie showing that this Court has personal jurisdiction over Lockton Co., and thus, Plaintiff cannot show a likelihood that its claims against Lockton Co. will survive a motion to dismiss, let alone a likelihood of success on the merits.  Accordingly, Plaintiff's request for any injunctive relief against Lockton Co. must be denied.

**B.**     **Lockton Southeast Did Not Tortiously Interfere with any Enforceable Contract**

To state a claim for tortious interference with an existing contract, a plaintiff must allege that:  (1) a valid contract subject to interference exists; (2) the defendant had knowledge of the contract; (3) a willful and intentional act of interference with the contract by defendant, without justification, that procures the third-party's breach of the contract; (4) actual breach of the contract; and (5) damages resulting therefrom.  *See*, *e.g.*, *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d. Cir. 2006).  The plaintiff must also assert that, but for the defendant's activities, there would not have been a breach of the contract.  *See*, *e.g.*, *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp.3d 705, 727 (S.D.N.Y. 2014).

As discussed below, the Non-Solicitation provisions of Individual Defendants' Employment Agreements are unenforceable, and, thus, are not subject to interference.  Further, Mercer – which has doubtlessly already searched the Individual Defendants' pre-resignation communications with one another – has not demonstrated that it will be likely to successfully show that any Lockton entity intentionally induced, encouraged, assisted, or permitted any of the Individual Defendants to violate any provisions of their agreements with Plaintiff.  For these reasons, Plaintiff is unlikely to succeed on the merits of its claim for tortious interference with existing contracts.

**C.**     **Defendants Did Not Tortiously Interfere With Plaintiff's Existing or Prospective Business Relationships**

To state a claim for tortious interference with prospective business relationships under New York law, a plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."  *Kirch*, 449 F.3d at 400 (internal quotation marks

14

and citations omitted).  Under New York law:

> The third element poses a particularly high hurdle, for it requires a plaintiff to show that the defendant committed a crime or an independent tort such as fraud, or acted for the sole purpose of inflicting intentional harm on the plaintiff.  The defendant's conduct must be, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.  Further, the plaintiff must establish that it would have entered into an economic relationship with the third party but for the defendant's wrongful conduct.

*Continental Indus. Group, Inc. v. Altunkilic*, 14 Civ. 790, 2017 WL 2895933, at *6 (S.D.N.Y. July 7, 2017) (quotations and citations omitted).

"Conclusory allegations of interference with an unspecified contract or of wrongful, intentional, malicious, or improper actions are insufficient at the pleading stage."  *Tarazi v. Truehope, Inc.*, 13 Civ. 1024, 2017 WL 5957665, at *19 (S.D.N.Y. July 28, 2017); *accord Symquest Group, Inc. v. Canon U.S.A., Inc.*, 186 F. Supp.3d 257 (E.D.N.Y. 2016).  And allegations that are based "solely on [a plaintiff's] 'suspicions,'" as is the case here throughout the Complaint, "cannot suffice to support a claim for tortious interference."  *Nadel v. Play-By-Play, & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000).

Plaintiff here cannot show that any defendant "committed a crime or an independent tort such as fraud, or acted for the sole purpose of inflicting intentional harm on the plaintiff," *Continental Indus. Group*, WL 2895933 at *6, because no such thing happened.  The *only* improper means alleged by Plaintiff is a bare allegation that "Lockton has directly or indirectly received Mercer's Confidential Information and Trade Secrets, and encouraged, or participated in its use in order to [solicit clients]."  Compl. ¶ 159.  But the evidence will disprove that allegation.  As discussed above, the Individual Defendants did not provide any Lockton entity with confidential information or trade secrets, and no Lockton entity received – let alone used – any of Plaintiff's confidential information or trade secrets.  Thus, Plaintiff will be unable to succeed on any tortious interference claim.

15

Moreover, Plaintiff's claim for tortious interference with *prospective* clients will be doomed by Plaintiff's inability to show that communications with any prospective client "would have culminated in a contract but for the interference of [defendant]." *Susskind v. IPCO Hos. Supply Corp.*, 373 N.Y.S.2d 627, 629 (2d Dep't 1975); *accord Continental Indus. Group*, 2017 WL 2895933, at \*7 ("Without any factual allegations to demonstrate that the suppliers and customers would have continued with [plaintiff] but for [defendant's] actions, [plaintiff] has not articulated an actionable claim for tortious interference with prospective economic advantage."). When stripped of its conclusory, speculative, and unsupported allegations, all that remains of Plaintiff's tortious interference claim are allegations about "[a]ctions intended to solicit business, which are motivated by economic self-interest"; such allegations "cannot be characterized as malicious." *Tri-Star Lighting Corp. v. Goldstein*, 58 N.Y.S.3d 448, 454 (2d Dept. 2017) (citation omitted).

For these reasons, Plaintiff is unlikely to succeed on the merits of its claim for tortious interference with prospective business relationships.

### D. Defendants Did Not Unfairly Compete or Misappropriate Confidential Information

A common law claim for misappropriation of trade secrets requires the plaintiff to show "(1) that it possessed a trade secret, and (2) that the defendant used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quotation and citation omitted).  As discussed above, Plaintiff has not shown and cannot show that any of the Individual Defendants provided any Lockton entity with trade secrets, let alone that any defendant made use of those trade secrets.  The failure to properly allege facts showing the existence of an actual "trade secret" is fatal to Plaintiff's Misappropriation of Confidential Information claim.  *See*

16

*Elsevier Inc. v. Doctor Evidence, LLC*, No. 17 Civ. 5540, 2018 WL 557906, at \*3-5 (S.D.N.Y. Jan. 23, 2018) (dismissing common law claim for misappropriation of trade secrets and statutory claim under DTSA because plaintiff failed to properly plead "sufficient facts that support trade secret status").

       To sustain an unfair competition claim involving misappropriation, a plaintiff must establish that the defendant (1) "misappropriated the plaintiffs' labors, skills, expenditures or good will"; and (2) "displayed some element of bad faith in doing so."  *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 833 N.Y.S.2d 138, 140 (2d Dep't 2007).  The allegations upon which Plaintiff's misappropriation claim is based – that defendants learned and misused Plaintiff's confidential information or trade secrets – are the same allegations upon which Plaintiff's misappropriation of confidential information claim is based.  Thus, Plaintiff will be unlikely to succeed on its unfair competition claim for the same reasons that Plaintiff will be unlikely to succeed on its unfair completion claim.  *See Continental Indus. Group, Inc.*, 2017 WL 2895933, at \*14 (dismissing unfair competition claim where it relied on the same insufficient underlying facts as other claims).

## III.   THE TEMPORARY RESTRAINING ORDER AND PROPOSED PRELIMINARY INJUNCTION EXCEED THE ENFORCEABLE SCOPE OF THE EMPLOYMENT AGREEMENTS

       "The issue of whether a restrictive covenant not to compete is enforceable by way of an injunction depends in the first place upon whether the covenant is reasonable."  *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (*citing Reed, Roberts Assocs.*, 40 N.Y.2d at 307). Courts evaluating the reasonableness of an employment agreement should employ "a three-pronged test," and should only enforce a restraint "if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. A violation of any prong renders the covenant invalid."  *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388–89 (N.Y. 1999) (citation and emphasis omitted).

2974421.7

A. **The Non-Solicitation Provisions of the Individual Defendants' Employment Agreements are Unenforceable to the Extent that they Apply to Prospective Clients**

To whatever extent restrictive covenants such as those at issue might be enforceable as to current clients of the former employer, courts in this district have repeatedly held that they are *not* enforceable as to *prospective* clients.  In *Karasaki*, this Court was asked to "enforce non-solicitation and confidentiality agreements entered into by a former insurance brokerage executive during his employment with Marsh." *Karasak*i, at *1.  On the basis of a non-solicitation agreement almost identical to the one at issue here, Marsh – which is Plaintiff's sister entity – sought an injunction barring solicitation of not just Marsh's clients, but also *prospective* clients. *Id.*  This Court rejected that request.

Instead, this Court held that employees do not "not forge a [protectable] client relationship with a prospective customer simply by sending the company a business proposal or making a pitch for its business in a sales meeting," *id.* at *17, and accordingly, this Court held that the restrictive covenant was not enforceable as to prospective clients.  Similarly, in *Schuhriemen*, in yet *another* case in which Plaintiff's sister entity attempted to enforce restrictive covenants against a former employer, the court held that an injunction covering prospective clients would be "overbroad." *Id.* at 537 (citing *Karasaki*, at *17); *see also Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 540 (S.D.N.Y. 2004) (declining to enforce portions of a non-compete clause relating to "*potential* clients of [the former employee] who were merely *solicited*" (emphasis in original)). The same result should be reached here.

Plaintiff's flagrant overreach in this action illustrates the extent to which orders enjoining contact with prospective clients are inherently overbroad and prone to abuse.  The temporary relief that Judge Engelmayer granted to Plaintiff included an injunction prohibiting defendants from soliciting "any prospective clients of Mercer with whom any Individual Defendant had contact or

18

from whom any Individual Defendant solicited business on behalf of Mercer during the last two years of his or her employment."  (TRO at 3).  Although Judge Engelmayer directed Mercer to prepare a "limited" list of "entities as to whom Mercer has a specific factual basis for claiming that one of the three individual defendants knew Mercer was preparing a pitch," (TRO Hearing Tr. 74:2-10.), Mercer instead submitted a list of ***Eight Hundred and Seventy*** (870) entities.

Mercer's outrageously overbroad list is *far* "greater than is required for the protection of the legitimate interest of the employer," it imposes "undue hardship" on not just the employee, but also its new employer, and it injures the public by inhibiting competition and preventing a broad array of entities from selecting the insurance broker of their choice.  *BDO Seidman*, 93 N.Y.2d at 388–89 (emphasis omitted).  This Court should follow settled New York law and prior holdings in this district – including its own – and reject Plaintiff's request for an injunction that in any way inhibits contact between defendants and entities that are not Plaintiff's current clients.

### B.    The Non-Solicitation Provisions of the Individual Defendants' Employment Agreements are Unenforceable

In *Karasaki*, this Court applied New York law to a case involving restrictive covenants similar to those at issue here and held that, although the restrictions were not enforceable as to *prospective* clients of the former employer, they were enforceable as to "client relationships acquired during the course of employment."  *Karasaki*, at *16.  The New York commercial division has since found that, in certain contexts – including where employees are forced to sign non-solicitation agreements as a condition of their employment – non-solicitation agreements almost identical to those at issue here are *not* enforceable.  *See Alliant*.

In *Alliant*, the commercial division denied a motion for a preliminary injunction on facts more striking than those here.  In that case, several high-level employees of Marsh – Plaintiff's sister entity – resigned to join a competitor, and in doing so, took not just Excel spreadsheets

19

identifying revenue and client names, but also business plans and a copy of a client contract. *Id.* at *1. As Plaintiff did here, Marsh asserted claims against the former employees and their new employees for, *inter alia*, breach of contract, misappropriation of trade secrets, unfair competition, and tortious interference. *Id.* at *2. Marsh moved for an injunction similar to the one sought here, but the court denied it in full.

In holding that a non-solicitation agreement virtually identical[4] to those at issue here was unenforceable, the court relied on three factors. *First,* the court found that "[i]nsurance brokers are generally not considered to be unique or extraordinary employees" such that losing them would cause irreparable harm to their former employer. *Id.* at *3. *Second*, because client contact lists contain only "publicly available information . . . that could be found in a phone book or on the Internet," the non-solicitation agreement at issue was "much broader than is necessary to prevent

---

[4] The non-solicitation clause in Mercer's Employment Agreement is as follows:

> Consequently, Employee covenants and agrees that in the event of separation from employment with the Company, whether such separation is voluntary or involuntary, Employee will not, for a period of twelve (12) months following such separation, directly or indirectly: (i) solicit clients of Employer for the purpose of selling or providing consulting services, projects or products of the type sold or provided by Employee while employed by Employer; or (ii) induce clients or prospective clients of Employer to terminate, cancel *or discontinue* business with Employer, or (iii) perform or supervise the performance of consulting services, projects or products of the type sold or provided by Employee while he or she was employed by Employer on behalf of any clients or prospective clients of Employer. This restriction shall apply only to those clients or prospective clients of Employer with whom Employee had contact or about whom Employee obtained Confidential Information or Trade Secrets during the last two (2) years of his or her employment with the Company.

Compl. ¶ 29. The *Alliant* non-solicitation agreement – which was drafted by Mercer's sister entity – is as follows:

> Employee will not, for a period of twelve (12) months following such separation, directly or indirectly: (i) solicit clients of Employer for the purpose of selling or providing products or services of the type sold or provided by Employee while employed by Employer, or (ii) induce clients or prospective clients of Employer to terminate, cancel, not renew, or not place business with Employer, or (iii) perform or supervise the provision or performance of products or services of the type sold or provided by Employee while he  or she was employed by Employer on behalf of any clients or prospective clients of Employer. This restriction shall apply only to those clients or prospective clients of Employer with whom Employee had contact or about whom Employee obtained Confidential Information or Trade Secrets during the last two (2) years of his or her employment with the Company.

Verified Complaint ¶ 19, *Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*, No. 651994/2015 (Sup. Ct. N.Y. Cnty. June 5, 2015), ECF No. 2.

2974421.7

the disclosure of trade secrets or confidential information." *Id.* at *2 (citing *Reed*, 40 N.Y.2d at 386 and *Willis of New York, Inc. v. DeFelice*, 750 N.Y.S.2d 39, 41-42 (1st Dep't 2002)). *Third*, Marsh had "failed to show . . . that it did not require the Individual Defendants to sign the Non-Solicitation Agreements as a condition of their initial or continued employment." *Id.* at *3.

Thus, the court in *Alliant* held that such overbroad non-solicitation agreements are unenforceable under New York law where the employer has not shown that it did not require the employees to sign the agreements as a condition of employment. *Alliant*, at *2-3. Here, like Marsh, Mercer has not shown – and cannot show – that it did not require the Individual Defendants to sign the Employment Agreements "as a condition of their initial or continued employment." *Id.* at *3. Accordingly, this Court should similarly apply New York law to find the non-solicitation agreements at issue unenforceable.

**C.    There is No Basis for an Order Enjoining Any Defendant from Servicing Clients**

Mercer seeks to preliminarily enjoin Lockton Co. and the Individual Defendants from servicing clients that have chosen to employ Lockton Co.'s or Lockton Southeast's services. Judge Englemayer refused to grant such relief in the TRO "in the interest of not disrupting the client." TRO Tr. at 78:2-4. For the same reason, this Court should not enjoin Lockton, Lockton Southeast, or the Individual Defendants from servicing of clients who have chosen to employ them. *See, e.g., Kanan Corbin Schupak & Aronow Inc. v. FD Int'l Ltd.*, 797 N.Y.S. 2d 883, 891 (Sup. Ct. N.Y. Cnty. 2005) (finding that "[a]n injunction will not serve to retrieve these lost clients, and the court cannot compel these clients to return to [the plaintiff]" and that "an injunction will not serve to prevent [current clients] from exercising their own preference by moving elsewhere.").

2974421.7

IV.   **PLAINTIFF HAS NOT SHOWN THAT IT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION**

A.   **Plaintiff's Potential Losses are Readily Quantifiable.**

To the extent that defendants have committed any actionable conduct – and, as discussed above, they have not – Plaintiff has not been and will not be irreparably harmed because any profits lost by Mercer resulting from a loss of clients are quantifiable.  For example, the lost net profits from losses from lost clients could be calculated based on the trailing annual revenue attributable to such clients, or the amount paid in commissions listed on the filed IRS Form 5500 for that client – which is publicly available.  *See* DiGregorio Decl. ¶¶ 7, 8.  Although this Court previously held that, in some contexts, the loss of client relationships and client relationships is not readily quantifiable, *Karasaki*, at *14, it does not appear that the parties in that action made this Court aware of the publicly-available resources, such as IRS Form 5500, that could be used to calculate damages.

Because Plaintiff's losses – if any – will be readily quantifiable, and because Plaintiff has not shown that any of its relationships with existing clients have been significantly damaged, Plaintiff has not shown that it will suffer irreparable injury absent a preliminary injunction.

B.   **The "Irreparable Harm" Provisions in the Employment Agreements Are Not Dispositive With Respect to the Individual Defendants.**

Although the Individual Defendants agreed in each of the Confidentiality Agreements that a breach would result in irreparable harm, such provision is not presumed to be binding if there is evidence that the losses are quantifiable.  *See Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir 1987) ("contractual language declaring money damages inadequate in the event of a breach does not control the question [of] whether preliminary injunctive relief is appropriate"); *Markovits v. Venture Info Capital, Inc.*, 129 F. Supp. 2d 647, 661 (S.D.N.Y. 2001) (contractual provision "is merely one factor that must be considered in deciding whether irreparable harm

22

would result if an injunction did not issue").

For the reasons set forth above, Mercer's potential losses attributable to any alleged breach of the Non-Solicitation Agreements is quantifiable, and thus the "Irreparable Harm" provision are not dispositive with respect to the Individual Defendants

### C.   The "Irreparable Harm" Provisions in the Employment Agreements Do Not Apply to Any Lockton Entity

Neither Lockton nor Lockton Southeast are parties to the Non-Solicitation Agreements, and thus they are not bound by any presumption relating to the "Irreparable Harm" provision. Moreover, as set forth above, there is no evidence that Lockton or Lockton Southeast interfered with any existing or prospective client or with any enforceable contract, or that Lockton or Lockton Southeast engaged in unfair competition or misappropriated confidential information. Even so, Mercer does not even identify or argue in its papers that any conduct of Lockton will result in irreparable harm to Mercer.  Instead, Mercer solely describes the alleged harm arising from the Individual Defendants' own conduct.  Accordingly, Mercer has failed in its burden to prove that Lockton's actions have irreparably harmed it.

## V.   IF THE COURT ISSUES A PRELIMINARY INJUNCTION, PLAINTIFF SHOULD BE REQUIRED TO POST A BOND.

Fed. R. Civ. P. Rule 65(c) confers broad discretion on a trial judge to set the amount of the bond when a preliminary injunction is issued, or to dispense with the requirement of a bond altogether.  *DeWitt Stern Grp., Inc. v. Eisenberg*, No. 13 Civ. 3060, 2013 WL 2420835, at *6 (S.D.N.Y. June 4, 2013).  Although the non-solicitation agreements here contain a reference to Mercer's entitlement to injunctive relief, "without the necessity of posting a bond" that language is not binding on the Court and the Court may still impose a bond requirement in its discretion.  *See Schuhriemen*, at 538.  As stated by Judge Rakoff in *Schuhriemen*, defendants "will likely be harmed if a bond is not posted, since if [they win] on the merits, [they] will have been prevented

23

from soliciting or servicing clients that [they are] entitled to service and therefore from garnering further business and goodwill." *Id*. Further, to the extent that this Court enjoins any Lockton entity in any way – and for the reasons stated above, it should not – the provision in the Employment Agreements addressing the bond have no relevance to Lockton Co. or Lockton Southeast, as neither entity is a party to the Employment Agreements. Thus, if this Court issues a preliminary injunction, defendants respectfully request that this Court require Plaintiff to post a bond of at least $1,000,000.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court vacate the Temporary Restraining Order, deny Plaintiff any further injunctive relief, and grant any other relief that this Court deems just and proper.

Respectfully submitted,

Dated:  March 7, 2018
      New York, New York      By:    /s/ Martin S. Siegel
                                      Martin S. Siegel
                                      S. Preston Ricardo
                                      Leron Thumim
                                      **GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP**
                                      711 Third Avenue
                                      New York, NY 10017
                                      Telephone:  (212) 907-7300

                                      *Attorneys for Defendants Matthew DiGregorio, Joanne Steed, Jada Preston, and Lockton Companies, LLC*

                                      Lyle Shapiro *(pro hac vice pending)*
                                      **HERSKOWITZ SHAPIRO LLP**
                                      9100 S. Dadeland Blvd.
                                      Miami, FL 33156
                                      Telephone:  (305) 423-1986

                                      *Attorney for Defendants Matthew DiGregorio, Joanne Steed, and Jada Preston*

24