UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERCER HEALTH & BENEFITS LLC,<br><br>    Plaintiff,<br><br>  -against-<br><br>MATTHEW DIGREGORIO, JOANNE STEED, JADA PRESTON and LOCKTON COMPANIES, LLC,<br><br>    Defendants. | Case No.: 18 Civ. 1805 (JGK) |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

A. Michael Weber
Shawn Matthew Clark
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

SUPPLEMENTAL STATEMENT OF FACTS ........................................................................ 2

      A.    Lockton's Structure and Recruitment of the Individual Defendants ..................... 2

      B.    The Individual Defendants' Discussions About Joining Lockton ......................... 3

      C.    Individual Defendants' Retention of Confidential Mercer Material ...................... 3

      D.    The Individual Defendants' Targeted Outreach to Mercer Clients ....................... 5

      E.    Lockton's Evaluation of the Individual Defendants' Agreements with Mercer .................................................................................................................... 5

      F.    Lockton's Retention of Counsel for the Individual Defendants ............................ 6

ARGUMENT .................................................................................................................................. 6

I.    MERCER IS ENTITLED TO INJUNCTIVE RELIEF GIVEN DEFENDANTS' RETENTION OF CONFIDENTIAL INFORMATION AND SOLICITATIONS ........... 7

II.    LOCKTON IS A PROPER PARTY TO THIS ACTION ................................................ 8

      A.    Lockton is Connected to the Subject Matter of this Dispute ................................. 8

      B.    Mercer is Likely to Succeed on the Merits of its Claims against Lockton ............ 8

III.    THE REQUESTED RELIEF IS APPROPRIATELY TAILORED TO PROTECT MERCER'S INTERESTS ................................................................................................ 10

CONCLUSION ............................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Eastern Bus. Sys., Inc. v. Specialty Bus. Solutions*,
    292 A.D.2d 336 (2d Dep't 2002) ...............................................................................................7

*FMC Corp. v. Taiwan Tainan Giant Indus. Co. Ltd.*,
    730 F.2d 61 (2d Cir. 1984) ........................................................................................................7

*Giffords Oil Co., Inc. v. Wild*,
    106 A.D.2d 610 (2d Dep't 1984) ...............................................................................................7

*Leo Silfen, Inc., v. Cream*,
    29 N.Y.2d 387 (1972) ................................................................................................................7

*PLC Trenching Co., LLC v. Newton*,
    No. 6:11-CV-0515, 2011 WL 13135653 (N.D.N.Y. Dec. 12, 2011) .........................................9

## PRELIMINARY STATEMENT

In its moving brief ("Mercer Mem."), Mercer established that the Individual Defendants,[1] and their current employer Lockton,[2] have breached each Individual Defendant's Non-Solicitation and Confidentiality Agreement with Mercer, causing Mercer irreparable injury. Specifically: i) while employed at Mercer, each Individual Defendant gained valuable, non-public information about Mercer's clients, prospects and business strategies; and ii) following their January 17, 2018 departure from Mercer, the Individual Defendants took this confidential information with them to Lockton, used it to contact Mercer clients in breach of their respective Agreements and actually persuaded at least one Mercer client to take its business to Lockton.

In their opposition brief ("Def. Mem.") and Declarations, Defendants principally assert that Mercer has failed to identify any confidential information, that they took no confidential information from Mercer, and that Lockton should not be a party to this action. These assertions have proven to be disingenuous at best, and false at worst. During their depositions, the Individual Defendants admitted that before resigning, and during their recruitment by Lockton, they emailed numerous documents containing hundreds of pages of confidential information concerning Mercer's client pricing, client contact information, market intelligence, past activity reports and targeting of prospects to their personal email accounts The Individual Defendants also admitted that they engaged in targeted solicitations of Mercer clients, including at least five meetings with Mercer clients during which they discussed Lockton's capabilities. In addition, the Individual Defendants have admitted that Lockton employees were intimately involved in recruiting them and negotiating their employment agreements, and that Lockton has retained

---

[1] For the Court's convenience, terms defined in Mercer's moving papers are used herein as defined therein.
[2] The term "Lockton" as used in this brief and supporting declaration includes Defendant Lockton Companies, LLC, Lockton, Inc. and Lockton Southeast Series LLC.

counsel for them and indemnified them in this action, providing abundant reason for Lockton to remain a defendant in this action. Defendants' contradictory statements in discovery show that the Court cannot simply take them at their word. Rather, Defendants' conduct has caused Mercer irreparable harm in the form of lost client relationships, goodwill and other injuries for which there is no adequate remedy at law, and their now-apparent efforts to conceal this conduct should not be rewarded.

## **SUPPLEMENTAL STATEMENT OF FACTS**[3]

### A. Lockton's Structure and Recruitment of the Individual Defendants

Lockton began recruiting DiGregorio in September 2017. Weber Decl. Ex. A at 28-31. Manoj Sharma, Lockton's Rule 30(b)(6) witness, personally recruited DiGregorio beginning in September 2017. Weber Decl. Ex. G at 12-13. Aside from Sharma, DiGregorio met with Lockton Executives Hiram Marrero, Page Crozer, Doug Hutcherson, Neil Metzheiser and Rick Elliott numerous times in September and October 2017. Weber Decl. Ex. A at 28, 31, 43-44, 48-50; Ex. G at 14, 16-18, 20, 29. DiGregorio also met with a "handful" of individuals in Kansas City, Missouri, where Lockton is headquartered. Weber Decl. Ex. A at 48-50. Sharma and Marrero also recruited Steed and Preston beginning in or about November 2017. Weber Decl. Ex. C at 31-34; Ex. E at 22-24; Ex. G at 31.

While Lockton claims that it "lacks any connection to the subject matter of this dispute" (Def. Mem. at 5), in fact, Sharma, Marrero, Crozer, Hutcherson and Metzheiser are described in publicly available documents, including in their own LinkedIn profiles, as employees of "Lockton," "Lockton Companies," or "Lockton Companies, LLC." Weber Decl. Exs. H, I. Sharma further testified that he presumes that Trey Humphrey, in-house counsel for Lockton,

---

[3] Pursuant to the Court's March 1, 2018 Order, Plaintiff deposed Defendants on March 9, 2018. This Supplemental Statement of Facts is limited to those depositions and their exhibits, and to otherwise publicly available materials, which all are attached as exhibits to the accompanying Reply Declaration of A. Michael Weber ("Weber Decl.").

Inc., would have discussed DiGregorio's non-solicitation restrictions with him during the hiring process, potentially during DiGregorio's Kansas City meetings. Weber Decl. Ex. G at 29. Sharma explained that there is an "overall, overarching Lockton umbrella," and that the Lockton parent entity receives 10 percent of the revenues of the Lockton Series entities in exchange for providing them with legal, financial, employee benefits and technical resources. Weber Decl. Ex. G at 8. Lockton Companies, LLC is a proper party in this action.

### B.  The Individual Defendants' Discussions About Joining Lockton

During his recruitment process, DiGregorio told Steed and Preston that he was considering joining Lockton, and also provided Lockton with Steed and Preston's contact information. Weber Decl. Ex. A at 53-54, 58-62; Ex. C at 41-43; Ex. E at 18-19. From on or before November 2017 to January 2018, Steed and Preston met repeatedly with Sharma and Marrero. Weber Decl. Ex. C at 31-36; Ex. E at 16-24. Steed recalls DiGregorio telling her that he was going to go to Lockton before he actually resigned, and she herself spoke more than five times with Preston during the same period about going to Lockton. Weber Decl. Ex. C at 41-43. Further, the Individual Defendants conferred about the date and sequence in which they would resign from Mercer – first DiGregorio, then Steed, then Preston. Weber Decl. Ex. C at 44-45; Ex. A at 181-82; Ex. E at 26-27.

### C.  Individual Defendants' Retention of Confidential Mercer Material

Prior to their depositions, each Individual Defendants declared, in identical language: "I did not retain any documents concerning client pricing, preferences, or renewal dates." ECF Nos. 14-16. Each also claimed, in nearly identical resignation notices, that upon resigning from Mercer, each Individual Defendant conducted a thorough search and did not possess any confidential Mercer material. Weber Decl., Exs. B, D, F. These statements are provably false.

At deposition, DiGregorio conceded that on October 11 2017, *after* beginning discussions with Lockton in August/September 2017, he sent nine emails from his work account to his personal email account. Weber Decl. Ex. A at 110-31; Ex. B. Between November 13, 2017 and November 16, 2016, DiGregorio sent himself nine more emails from his work account to his personal email account, and in or around that timeframe airdropped various files to his personal computer. Weber Decl. Ex. A at 75, 82, 131-51; Ex. B. The emails DiGregorio sent to himself contained: (i) an "Active Account Listing" marked "Confidential" containing client names together with consultant and office assignments; (ii) a "Marsh 2017 Prospect List" spreadsheet, containing hyperlinks to prospect company websites, leadership profiles and company news; (iii) a "Florida Pipeline Report" marked "Confidential Information: Do Not Distribute" and containing information about recently closed or anticipated Mercer deals; (iv) a ten-page "MMA Florida Client List", and (v) various other Mercer documents and communications.

DiGregorio described why he sent himself this material: "to have access to information relative to future clients." Weber Decl. Ex. A at 113-14. He continued, "some of them were for business purposes and some of them were documents I thought would be helpful in the future if I decided to leave." *Id.* at 173. Further, DiGregorio admits that he still has copies of some of these documents in his personal email account. *Id.* at 159. DiGregorio became aware that he retained these copies "around the time of the lawsuit"—*i.e., before* falsely stating in his Declaration that he retained no Mercer materials other than his contact list. *Id.* at 162-63; DiGregorio Decl. ¶ 11.

Steed and Preston also emailed confidential information from their work accounts to their personal accounts during their recruitment by Lockton. During the same week that DiGregorio sent nine emails containing confidential information from his work account to his personal account, Steed sent herself a list of Mercer clients, including annual revenues derived from those

-4-

clients, and a list of all Florida-based Mercer employees and their contact information. Weber Decl. Ex. C at 76-81; Ex. D. Just one day earlier, Preston sent herself a Statement of Work for a Mercer client, which set forth "the scope of [Mercer's] work and the compensation for [the engagement]." Weber Decl. Ex. E at 76-81; Ex. F.

### D. The Individual Defendants' Targeted Outreach to Mercer Clients

Steed testified that she did not simply "sen[d her]self" her Mercer contact list, as stated in her Declaration, but rather "selected" contacts to take based on her "thoughts of which ones [she] wanted to have." Weber Decl. Ex. C at 56; Steed Decl. ¶ 5. Further, she did not mail out a general announcement regarding her move to Lockton; instead, on the day she resigned, Steed individually telephoned "13 to 15" Mercer clients, told them of her move and followed up by email with her new contact information. Weber Decl. Ex. C at 12, 17, 65-67. Earlier, in December 2017, Steed had told the COO of Planned Parenthood, a Mercer client, that she was thinking of moving to Lockton. Weber Decl. Ex. C at 73-74. Similarly, Preston individually telephoned "certain" Mercer clients to tell them that she had left Mercer for Lockton. Weber Decl. Ex. E at 48; Preston Decl. ¶ 10. Following her resignation, in clear violation of her Non-Solicitation Agreement with Mercer, Steed met with at least five Mercer clients, with whom she had previously worked, to "talk about Lockton['s] capabilities." Weber Decl. Ex C at 17-25. DiGregorio attended at least two of those meetings. *Id.* at 18, 24.

### E. Lockton's Evaluation of the Individual Defendants' Agreements with Mercer

Sharma attested that "[e]ach of the individual defendants were told not to solicit or recruit other Mercer employees." ECF No. 17. However, Sharma testified that he "do[es] not believe" that anyone asked DiGregorio "about any restrictions he had on joining Lockton," but simply presumes that Trey Humphrey, who is in-house counsel for Lockton Companies, Inc., would have asked DiGregorio about such restrictions. Weber Decl. Ex. G at 27, 29, 46-48. Meanwhile,

the Individual Defendants do not recall anyone asking them about non-solicitation obligations; DiGregorio recalls telling Lockton that he did not know whether he had any restrictions, and Steed and Preston are not sure what restrictions their Mercer Non-Solicitation Agreements impose. Weber Decl. Ex. A at 52; Ex. C at 26-27; Ex. E at 26.

      **F.    Lockton's Retention of Counsel for the Individual Defendants**

Lockton retained Lyle Shapiro, Esq. as counsel for the Individual Defendants in or about October 2017 – nearly three months before they resigned their positions at Mercer. Weber Decl. Ex. A at 67; C at 15. Attorney Shapiro met with each of the Individual Defendants in person in early December 2017, and later advised each of them concerning the resignation letters they submitted to Mercer on January 17, 2018. Weber Decl. Ex. A at 67-68; Ex. C at 44; Ex. E at 26-27. Lockton is paying each of the Individual Defendants' attorneys' fees in this action, pursuant to indemnification and hold harmless clauses in their respective agreements with Lockton. Weber Decl. Ex. A at 6-9; Ex. C at 8; Ex. C at 8; Ex. E at 22-23.

## ARGUMENT

Defendants do not dispute the legal standard for granting injunctive relief. (Def. Mem. at 5). Rather, they contend that the Individual Defendants retained no confidential Mercer information when they after resigning (Def. Mem. at 5-11) and claim that Lockton is not an appropriate party to this action (*id.* at 12). Both assertions are flatly untrue. As described above, the Individual Defendants retained volumes of information regarding Mercer's clients, pricing and targeting strategies after leaving Mercer; such material was clearly protected by the Individual Defendants' Agreements and by applicable law, and Mercer will suffer irreparable injury if Defendants are not enjoined from further violations of their Agreements. Second, Lockton employees actively recruited the Individual Defendants, and Lockton is indemnifying them in this action. Lockton therefore should remain a party to this action.

**I.     MERCER IS ENTITLED TO INJUNCTIVE RELIEF GIVEN DEFENDANTS' RETENTION OF CONFIDENTIAL INFORMATION AND SOLICITATIONS**

Defendants contend that on leaving Mercer, the Individual Defendants retained only their own contact lists and complain that Mercer has failed to specify what confidential information is at issue. Def. Mem. at 4. This argument has succumbed to the barest minimum of discovery, as DiGregorio concedes that he sent to himself, and failed to delete, Mercer documents comprising not only lists of client and prospect names, but extensive spreadsheets concerning those entities, including account activity, deal status, pricing, business intelligence and other matters that Mercer has made significant investments to compile and has explicitly marked "confidential" and "not for distribution." Weber Decl. Ex. A at 110, 113-14, 117-22; Ex. B. Further, contrary to prior sworn testimony, DiGregorio concedes that he still possesses Mercer's confidential information on his Lockton and/or personal computers. Weber Decl. Ex. A at 157-64.

This is not a case, as Defendants argue, in which mere lists of names or Outlook contacts, are at issue. Rather, the documents that DiGregorio emailed to himself include complex spreadsheets reflecting years of work and investment by his former Mercer colleagues, as well as information that Defendants could not possibly "ascertain" from public sources, much less their so-called "recollection" of work that they did not personally perform. Spreadsheets and compilations of this type are properly viewed as confidential information that deserve the Court's protection. *See Leo Silfen, Inc., v. Cream,* 29 N.Y.2d 387, 392–93 (1972); *Eastern Bus. Sys., Inc. v. Specialty Bus. Solutions,* 292 A.D.2d 336, 337–38 (2d Dep't 2002); *Giffords Oil Co., Inc. v. Wild,* 106 A.D.2d 610 (2d Dep't 1984); *FMC Corp. v. Taiwan Tainan Giant Indus. Co. Ltd.,* 730 F.2d 61, 63 (2d Cir. 1984).

Indeed, DiGregorio admits that his reason for emailing these documents to himself was "to have access to information relative to future clients" and that these documents "would be

helpful in the future if [he] decided to leave" Mercer. Weber Decl. Ex. A. at 113-14, 173. If, as Defendants assert, the spreadsheets DiGregorio emailed to himself contain only publicly available information, DiGregorio would have no need to email himself these documents for future use. Given DiGregorio's admission, and Defendants' solicitations, the Court should not accept Defendants' assertions that they do not plan to use Mercer's confidential information.

## II.  LOCKTON IS A PROPER PARTY TO THIS ACTION[4]

### A.  Lockton is Connected to the Subject Matter of this Dispute

Lockton contends that it has no connection with this dispute, nor contacts with the State of New York. However, even the limited discovery adduced to date suggests that this is not accurate, as numerous individuals who were involved in recruiting the Individual Defendants publicly hold themselves out as employees of "Lockton," "Lockton Companies," or "Lockton Companies, LLC." Weber Decl. Ex. H. Sharma, who testified as Lockton's corporate representative, shed little light on Lockton's corporate structure, alluding to an "overall, overarching Lockton umbrella" entity that provides legal and other administrative services to the Series entities in exchange for 10 percent of their revenue. Weber Decl. Ex. G at 8. Sharma testified that Trey Humphrey, Lockton Inc.'s in-house counsel, would have been involved in discussions with DiGregorio. *Id.* at 29.

### B.  Mercer is Likely to Succeed on the Merits of its Claims against Lockton

As set forth in its moving brief, Mercer is likely to succeed on its claim against Lockton for tortious interference with contract. By Sharma's account, Lockton was aware of the Individual Defendants' restrictive covenants and retained counsel to advise them as early as October 2017, approximately three months before they resigned from Mercer. Weber Decl. Ex.

---

[4] As Defendants have yet to answer the Complaint, Mercer intends to amend the Complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1) to add Lockton, Inc. and Lockton Southeast Series as Defendants as joint employer.

D at 27, 29. In addition, DiGregorio admits that he emailed confidential Mercer documents to his personal account *after* he began employment discussions with Lockton in September 2017, and that he did so because these documents "would be helpful in the future if I decided to leave" Mercer. Weber Decl. Ex. A. at 173. The emailed documents included not only information relative to existing clients, but to prospective Mercer business that had yet to be closed and might easily be disrupted. *Id.* at 117-22.

In response, Lockton conclusorily states that no Lockton entity received or used Mercer's information. Def. Mem. at 15. However, DiGregorio admitted at deposition that he not only retained Mercer's confidential informant but that it currently resides on his Lockton computer. Weber Decl. Ex. at 82-84. Lockton obviously stands to benefit from the information improperly retained by DiGregorio after they began recruiting him, and should not be excused from this litigation merely because it summarily says it never "used" such information itself.

Likewise, Mercer is likely to succeed on the merits of its unfair competition claim for the reasons set forth in its moving brief. Mercer Mem. at 16-17. Defendants improperly cite cases related to the misappropriation of trade secrets; these authorities are inapposite. Def. Mem. at 16-17. The proper standard is whether "the defendant (1) misappropriated and used, (2) the plaintiff's property, (3) to compete against the plaintiffs' use of the same property." *PLC Trenching Co., LLC v. Newton,* No. 6:11-CV-0515, 2011 WL 13135653, at *9 (N.D.N.Y. Dec. 12, 2011). Further, to the extent that some element of "bad faith" is required (Def. Mem. at 17), one need only compare the conclusory declarations of the Individual Defendants with their admissions at deposition that they retained confidential Mercer documents and selectively targeted Mercer clients. *Compare* Weber Decl. Ex. A at 96 *with* 158-64. The facts adduced in discovery to date amply show that Mercer is likely to succeed on its unfair competition claim.

### III. THE REQUESTED RELIEF IS APPROPRIATELY TAILORED TO PROTECT MERCER'S INTERESTS

Finally, the restrictions that Mercer seeks to enforce are no greater than is required to protect Mercer's interests. Given DiGregorio's retention of the "Florida Pipeline List," which describes recently closed Mercer deals as well as deals in process, he has gained knowledge of many more Mercer clients and prospects than just those whom he personally serviced or solicited while at Mercer. Weber Decl. Ex. A at 117-22. To the extent that such detailed information could not possibly be deemed "publicly available," and comprises far more than simple "rolodexes," Defendants' reliance on *Marsh USA, Inc. v. Alliant Ins. Servs. Inc.* is misplaced. Def. Mem. at 19-20. Defendants should be enjoined from pursuing any of the Mercer clients or prospects referenced in any of the Mercer materials that DiGregorio retained after joining Lockton.

### CONCLUSION

For the foregoing reasons, and those set forth in its moving papers, Mercer respectfully requests that the Court grant its motion for injunctive relief.

Date: March 13, 2018
New York, New York

/s/ A. Michael Weber
A. Michael Weber
Shawn Matthew Clark
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Attorneys for Plaintiff*
*Mercer Health & Benefits LLC*