UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERCER HEALTH & BENEFITS LLC,<br><br>    Plaintiff,<br><br>  -against-<br><br>MATTHEW DIGREGORIO, JOANNE STEED, JADA PRESTON and LOCKTON COMPANIES, LLC,<br><br>    Defendants. | Case No.: _____<br><br>**DECLARATION OF CORY LYNN** |

**CORY LYNN**, declares pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury that the following is true and correct:

1. I am a Partner and the Florida Office Leader at Mercer Health & Benefits LLC ("Mercer"). In my capacity as Florida Officer Leader, I manage Mercer's Fort Lauderdale and Tampa offices.

2. I submit this declaration in support of Defendants Order to Show Cause seeking a temporary restraining order, a preliminary injunction and expedited discovery. Except where otherwise stated, I make this declaration based on my personal knowledge and/or based on Mercer's books and records.

3. Mercer is a world leader in the health and benefits marketplace. It provides clients with a comprehensive array of health and benefits solutions, including managing employee benefit plans, assisting clients with choosing the right employee benefits plans to fit their needs, providing access to market experts, and advising on regulatory compliance.

4. I have worked for Mercer for approximately 19 years. Before I became the Florida Officer Leader in 2014, I worked as a Principal in Mercer's Tampa office.

### Matthew DiGregorio's Employment with Mercer

5. Matthew DiGregorio ("DiGregorio") began his employment with Mercer as a Principal/Sales Professional in January 2010.

6. Immediately prior to joining Mercer, DiGregorio worked at Mercer's affiliated company, Marsh USA Inc. ("Marsh"), as an Associate Client Executive with a focus on property and casualty liability.

7. Prior to joining Mercer, DiGregorio had limited experienced selling employee health and benefits solutions of the type that Mercer provides.

8. As a Principal/Sales Professional, DiGregorio was responsible for, among other tasks, generating new client business and maintaining and growing business with existing clients.

9. DiGregorio relied extensively on his Mercer colleagues to develop and grow client relationships. He depended on Principals and Senior Associates to handle day-to-day service issues for clients, allowing him to focus on client development.

10. Mercer supported DiGregorio's client-facing role by sponsoring client events, financing his membership in professional and networking organizations, and investing in marketing and sales tools, all of which DiGregorio used to form and strengthen client relationships on behalf of Mercer.

11. As a Sales Professional, DeGregorio gained valuable knowledge of Mercer's clients, including their health and benefits needs and preferences, fees and revenues paid to Mercer, amounts paid in insurance premiums, recent losses and other risk factors, and plan terms and renewal dates. This client confidential information is protected by Mercer and not available to the general public. Based on my experience in the insurance industry, such information about a specific client would be valuable to a competitor looking to compete for that client's business.

12. On or about January 7, 2010, in connection with his commencement of employment with Mercer, DiGregorio entered into a Non-Solicitation Agreement and a Confidentiality Agreement, true and correct copies of which are attached as **Exhibit A**.

**JoAnn Steed's Employment with Mercer**

13. JoAnn Steed ("Steed") began her employment with Mercer in or around April 2007 as a Principal.

14. As a Principal at Mercer, Steed was responsible for managing client relationships and ensuring client retention by evaluating client risks and developing solutions to address client needs. She served as a primary client contact for day-to-day client needs and client questions.

15. Steed directly managed approximately twelve client relationships.

16. Steed relied on financial and internal resources from Mercer to manage client relationships. She developed client relationships by virtue of her employment and with the support of an experienced team of Mercer employees, on whom she relied on to carry out her job duties.

17. Mercer further supported Steed's client-facing role by financing client related travel and entertainment expenses, sponsoring client events, and investing in marketing and sales tools, all of which Steed used to manage and strengthen her client relationships on behalf of Mercer.

18. On or about April 16, 2007, in connection with her commencement of employment with Mercer, Steed signed a Non-Solicitation Agreement and a Confidentiality Agreement, true and correct copies of which are attached as **Exhibit B**.[1]

---

[1] Steed signed her Non-Solicitation and Confidentiality Agreements using her maiden name, "JoAnne Hemmerde."

3

### Jada Preston's Employment with Mercer

19. Jada Preston ("Preston") began her employment with Mercer in or around October 2006 as an Enterprise Consulting Analyst.

20. In that capacity, Preston was responsible for managing client relationships and ensuring client retention by evaluating client risks and developing solutions to address client needs.

21. Preston served as a client contact for day-to-day client needs and client questions.

22. She assisted Steed in managing approximately twelve client relationships, serving in essence as Steed's primary deputy.

23. Like Steed, Preston relied on financial and internal resources from Mercer to manage client relationships. She developed client relationships by virtue of her employment and with the support of an experienced team of Mercer employees, on whom she relied on to carry out her job duties on behalf of Mercer.

24. On or about October 2, 2006, in connection with her commencement of employment with Mercer, Preston entered into a Non-Solicitation Agreement and a Confidentiality Agreement, true and correct copies of which are attached as **Exhibit C**.[2]

### The Abrupt Resignation of DiGregorio, Steed and Preston

25. On January 17, 2017, I received separate calls from DiGregorio, Steed Preston, each within minutes of each other, and each communicating his or her resignation from employment.

26. Thereafter, I received separate emails from DiGregorio, Steed and Preston, each within minutes of each other, and each attaching a "Notice of Resignation." Copies of the emails

---

[2] Preston signed her Non-Solicitation and Confidentiality Agreements using her maiden name, "Jada N. Hill."

4

I received on January 17th at 8:35 a.m., 8:50 a.m. and 9:08 a.m. are collectively attached as **Exhibit D.**

27. The language in each of the Notices of Resignation is nearly identical. Indeed, each notice begins with the same sentence ("I am writing to let you know that I have decided to resign from Mercer, effective immediately,") and each contains the following sentences, "I have performed a thorough, diligent search and have confirmed that I do not have any confidential Mercer information in my possession, electronic or otherwise. I am leaving my Mercer devices and all other property of Mercer in my office." *See* **Exhibit E,** true and correct copies of the Resignations Notices I received.

28. Mercer's employee handbook provides that departing employees should provide their managers with two weeks' notice of their resignation date and a written resignation letter. DiGregorio, Steed and Preston, however, resigned abruptly, with no advanced notice.

### Breaches of the Non-Sonication Agreements and Confidentiality Agreements by DiGregorio, Steed and Preston

29. On or about January 19, 2018, just two days after their abrupt resignations, if not earlier, DiGregorio, Steed and Preston began soliciting clients with whom they had contact at Mercer.

30. During the week of January 22, 2018, a client's Vice President for Human Resources told Joanna Marini, a Principal at Mercer that DiGregorio called the prior Friday and told the Vice President for Human Resources that he resigned his position at Mercer and accepted a position at Lockton.

31. Ms. Marini emailed me on January 25, 2018, to report the statement made to her by the client's Vice President of Human Resources.

5

32. On January 31, 2018, Maggie Novo-Chavarry, another Principal at Mercer, met with the Director of Human Resources for a hotel client that had been serviced by Steed and Preston during their employment at Mercer. During the meeting the hotel client's representatives acknowledged that they met with Steed and Preston, following Steed's and Preston's resignations from Mercer, and that Steed and Preston attempted to sell health and benefit services on behalf of Lockton Companies, which were of a type sold and provided by Mercer.

33. Ms. Novo-Chavarry reported the conversation to me that same day.

34. On February 7, 2018, Ms. Marini received two emails from the Chief Financial Officer of a nationwide steel fabricator, in which the CFO forwarded emails he received from DiGregorio. Ms. Marini shared the emails with me.

35. Also on February 7, 2018, Denise Pernice, a Senior Associate at Mercer received a copy of a text message a client received from DiGregorio discussing DiGregorio's new position at Lockton.

36. Ms. Pernice forwarded a copy of the text messages to me.

37. On February 14, 2018, Ms. Pernice met with a law firm client who had been a client of Mercer's for approximately four years. During the meeting, a representative for the law firm client informed Ms. Pernice that the law firm would be soliciting proposals from other health and benefits solutions providers.

38. Ms. Pernice subsequently told me about her conversation with the law firm client.

39. On February 15, 2018, Ms. Pernice and I met with the Owner and the Chief Financial Officer of a restaurant client which had been serviced by Steed and Preston during their employment at Mercer. During the meeting, the Chief Financial Officer informed us that the restaurant was considering moving its business to a different vendor. He acknowledged that

6

he had recently met Steed and Preston, and that he was considering moving his business to Lockton Companies.

40. On February 22, 2018, I learned from Melanie Fava, a Principal at Mercer, that Planned Parenthood of South, East and North Florida ("Planned Parenthood"), a client formerly serviced by Steed and Preston, terminated its relationship with Mercer to engage the services of a new vendor.

41. The following day, I learned from Ms. Fava that Planned Parenthood had engaged Lockton as their new broker of record.

Dated: February 26, 2018
      Tampa, Florida

                                                      Cory Lynn