UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MERCER HEALTH & BENEFITS LLC,

        Plaintiff,

        -against-

MATTHEW DIGREGORIO, JOANNE STEED, JADA PRESTON and LOCKTON COMPANIES, LLC,

        Defendants.

Case No.: _____

**DECLARATION OF DENISE PERNICE**

---

**DENISE PERNICE**, declares pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury that the following is true and correct:

1.    I am a Principal at Mercer Health & Benefits LLC ("Mercer"). Except where otherwise stated, I make this declaration based on my personal knowledge.

2.    I joined Mercer in October 2006 as a Senior Associate, a position which I held until May 2010. I returned to Mercer as a Senior Associate in November 2011, after leaving for a short period to pursue another opportunity.

3.    As a Principal at Mercer, I am responsible for managing client relationships and ensuring client retention by evaluating client risks and developing solutions to address client needs. I serve as a primary client contact for eighteen clients and address day-to-day client needs and client questions.

4.    I work closely with Sales Professionals who are responsible for generating new client business and growing business with existing clients. I began working with Matthew DiGregorio ("DiGregorio"), a former Sales Professional, on a number of clients in or about November 2011, after I returned to Mercer as a Senior Associate.

5. On or about January 17, 2018, I learned that DiGregorio and two other employees, JoAnne Steed ("Steed") and Jada Preston ("Preston"), resigned their positions at Mercer to begin working at Lockton Companies.

6. Over the next few days, I contacted certain long-standing Mercer clients to inform them that DiGregorio, Steed and Preston had resigned and to prepare to transition accounts. Six of these clients informed me that they had already heard from DiGregorio, Steed and/or Preston before I called.

7. Rohit Navani, the Executive Vice President/Chief Operating Officer of a large client with whom I have a long client relationship, told me on January 18, 2018, that he had not heard from DiGregorio, but he would let me know if DiGregorio made contact.

8. I was aware that DiGregorio had Mr. Navani's contact information. On November 16, 2017, DiGregorio sent me an email asking for Mr. Navani's phone number, which I provided, unaware that DiGregorio would resign his employment just sixty-two days later.

9. On February 7, 2018, Mr. Navani sent me a copy of a text message he received from DiGregorio. The text message, read, in part: "I wanted to formally announce that I have taken on a new role with the largest private held property, casualty, and employee benefits broker in the country, Lockton Companies as a Senior Vice President out of our Miramar, FL office. Please see below and attached for my new contact information. I look forward to connecting with you in the near future and have a wonderful day! Best Regards, Matt D." A copy of the text message I received from Mr. Navani is attached hereto as **Exhibit F**.

10. I subsequently learned that DiGregorio, Steed and/or Preston solicited other Mercer clients.

11. On February 14, 2018, I met with a law firm client with whom I had worked for approximately four years. The law firm client first engaged Mercer to help them with employee health and benefits solutions in 2014. Thereafter, the law firm client executed renewal agreements with Mercer in 2015, 2016 and 2017 to continue the relationship without the need to submit written proposals or bids.

12. On Thursday, February 15, 2018, the Controller of the Law Firm sent an email advising that for the first time that the law firm would be soliciting proposals from other companies to provide health and benefit solutions. The law firm client invited us to submit a written proposal for the first time since 2014.

13. On the following day, I met with the Owner and the Chief Financial Officer of a restaurant client which had been serviced by Steed and Preston during their employment at Mercer. The purpose of the meeting was to introduce myself as the restaurant's new Mercer contact and to discuss the restaurant's ongoing relationship with Mercer.

14. During the meeting, the restaurant's Chief Financial Officer informed me that the restaurant was considering moving its business to a different vendor. He acknowledged that he had recently met Steed and Preston, and that he was considering moving his business to Lockton Companies.

15. The Chief Financial Officer expressed his surprise that former Mercer employees were not subject to non-solicitation agreements. When I confirmed that Mercer employees do in fact sign non-solicitation agreements, the Chief Financial Officer responded that he "didn't want to get anybody in trouble."

3

Dated: February 26, 2018
       Sunrise, Florida

                                            Denise Pernice

4

# EXHIBIT F

**Rohit**

Wed, Feb 7, 11:21 AM

Hello,

I hope this message finds you well.

I wanted to formally announce that I have taken on a new role with the largest privately held property, casualty, and employee benefits broker in the country, Lockton Companies, as a Senior



Rohit

benefits broker in the country, Lockton Companies, as a Senior Vice President out of our Miramar, FL office. Please see below and attached for my new contact information. I look forward to connecting with you in the near future and have a wonderful day!


Best Regards,


Matt D.